(Docket Entry No. 5)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
: 
HSI-HUA MCCARTNEY :
:
      Plaintiff, :   Civil No. 07-5776 (RBK)
:
      v. :   **OPINION**
:
TRANSAMERICA INSURANCE & :
INVESTMENT GROUP, et al., :
:
      Defendants. :
_____ :

**KUGLER**, United States District Judge:

      This matter comes before the Court on the motion of Defendant Transamerica Occidental Life Insurance Company ("Defendant" or "TOLIC") to dismiss the Complaint of Plaintiff Hsi-Hua McCartney ("Plaintiff" or "Ms. McCartney"). For the reasons that follow, Defendant's motion will be granted in part and denied in part.

**I.    BACKGROUND**

      This case arises from a dispute about a life insurance policy. On May 1, 2004, Ronald McCartney applied for a life insurance policy through TOLIC. A policy for $750,000 was issued on May 27, 2004 and was owned by Black Tiger, Inc., a company owned by Mr. McCartney and his wife, Hsi-Hua McCartney. Ms. McCartney was named as the beneficiary on the policy. After Mr. McCartney died of alcohol poisoning on November 24, 2005, in Fuzhou, China, Ms. McCartney attempted to file a claim for the amount owed under the policy. Because Mr.

McCartney passed away within two years of the issue date of the policy, his death was within the "contestable period" under the life insurance contract.  Policies can still be invalidated during this two-year period, and TOLIC conducted an investigation into Mr. McCartney's application and the circumstances of his death and then denied the claim, cancelled the policy, and refunded the premiums to Ms. McCartney.

According to TOLIC, Mr. McCartney misrepresented his medical history on his insurance application.  When asked on the application to indicate whether he had "been examined or treated by any physician" in the past five years, Mr. McCartney gave the names of his family physicians, Drs. Bertagnoli and Scott, as well as a Dr. Takacs, who he'd seen for check ups and colds.  When asked what medications he was taking, Mr. McCartney wrote the drugs Lipitor, Lexapro, and Trilipitol.[1]  He was also asked if he had undergone "observation or treatment at a clinic hospital or sanitarium," to which he replied no.  When asked if he had any "nervous or mental condition," Mr. McCartney also replied in the negative.  The policy was amended on June 10, 2004 to indicate that the Mr. McCartney's current medications included only "Lexapro for anxiety."

In TOLIC's letter of June 8, 2006 denying the claim and declaring the policy void, a claims consultant wrote that TOLIC's investigation revealed that Mr. McCartney was treated at a Mobile Intensive Care Unit on August 5, 2002 after taking about 15 Xanax tablets.  Mr. McCartney was subsequently treated at an emergency room the next day for the drug overdose and was allegedly suicidal.  The claims consultant also wrote that Mr. McCartney saw a doctor

---

[1] Trilipitol is apparently a misspelling of the drug Trileptal, which is used as an anti-convulsant to treat seizure disorders and is also used to treat bipolar disorder.  Mr. McCartney was prescribed Trileptal for bipolar disorder.  (Pl.'s Br. at 8.)

on September 25, 2002 who indicated that Mr. McCartney had attempted suicide three times in the past two years, always with pills.  The claims consultant found that if that information had been included in Mr. McCartney's application, the application would have been denied.  As a result, TOLIC voided the policy.  (Def.'s Ex. B.)

Ms. McCartney disputes this version of her husband's medical history.  According to Ms. McCartney, Mr. McCartney was interviewed by a TOLIC representative who then filled in the application paperwork, and Mr. McCartney truthfully responded to the questions.  She claims that the events from August 2002 all stem from an incident when she believed that her husband had taken an overdose of Xanax while drinking alcohol.  However, the toxicology report from the hospital showed that Mr. McCartney's blood did not contain benzodiazepine, which is the class of drugs to which Xanax belongs.  Ms. McCartney also notes a report form the Psychiatric Intervention Program, which includes a statement from Mr. McCartney that he did not overdose on Xanax or attempt suicide.  She denies that Mr. McCartney ever attempted suicide or was ever suicidal.

Ms. McCartney filed a Complaint in the Superior Court of New Jersey in Atlantic County on October 26, 2007.  The three-count Complaint alleges that by not paying Ms. McCartney's claim, TOLIC breached the insurance contract, committed a bad faith denial of coverage, and violated the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1-20 ("CFA").  TOLIC removed the case to this Court on December 4, 2007 and filed a motion to dismiss the second and third counts of the Complaint on December 21, 2007.  TOLIC also filed an answer with counterclaims against Ms. McCartney and third-party claims against Black Tiger, Inc. on June 3, 2008.

3

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss under the Federal Rule of Civil Procedure 12(b)(6), the Court must accept Plaintiff's allegations along with all reasonable inferences that may be drawn from them as true. Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001) (citing Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1994)). The Court may dismiss the Complaint only if Plaintiff can prove no set of facts that would entitle him to relief. Burstein v. Ret. Account Plan of Employees of Allegheny Health Educ. & Research Found., 334 F.3d 365, 374 (3d. Cir. 2003) (citation omitted).

## III. DISCUSSION

### A. Bad Faith Denial

TOLIC seeks dismissal of Plaintiff's second count, which alleges that TOLIC's "failure to pay is in bad faith and constitute[s] willful misconduct." (Compl. at 2.) New Jersey permits a plaintiff who alleges she has been wronged by her insurer to state a claim for a bad faith denial of her claim in addition to a claim for breach of contract. Pickett v. Lloyd's, 131 N.J. 457, 473 (1993). Bad faith is established by showing that no debatable reasons existed for denial of the benefits. Id. at 481. Under the "fairly debatable" standard, a claimant must establish a right to summary judgment on the substantive claim in order to be entitled to assert a claim against the insurer for bad faith refusal to pay. Id. at 473. This standard, in essence, requires the Court to evaluate whether Plaintiff is entitled to summary judgment even though Defendant is the moving party. Tarsio v. Provident Ins. Co., 108 F. Supp. 2d 397, 400-02 (D.N.J. 2000) (commenting on the awkwardness of this rule, but holding that because genuine issues of material fact existed as to the reasons for denial of the claim, plaintiff was not entitled to judgment as a matter of law on

the underlying claim and so the claim for bad faith denial was dismissed).

However, the Court does not need to delve into Plaintiff's entitlement to summary judgment in this case because the issue is simply premature. The question of whether Ms. McCartney will prevail on her claim as a matter of law, or whether TOLIC had a fairly debatable reason for denying her claim, requires a factual examination. See On Air Entertainment Corp. v. Nat'l Indem. Co., 210 F.3d 146, 153 (3d Cir. 2000) (affirming district court decision dismissing bad faith denial claim on motion for judgment as a matter of law pursuant to Fed. R. Civ. Pro. 50(a) after hearing plaintiff's evidence). Discovery has not yet concluded and no evidence is before the Court, only the pleadings. TOLIC argues that because issues of fact exist, Plaintiff cannot be entitled to summary judgement at so her claim of bad faith denial must be dismissed. (Def.'s Mot. at 11.) As noted by another court in this District, "[t]his is illogical and, if accepted, would require that plaintiffs prove their bad faith claims conclusively in their complaints, an outcome at odds with our legal system's differentiation of pleading and proof." Gallerstein v. Berkshire Life Ins. Co. of Am., 2006 U.S. Dist. LEXIS 64478, *11-12 (D.N.J. Sept. 11, 2006). This Court agrees and, evaluating the facts as alleged in the light most favorable to the Plaintiff, cannot conclude that Plaintiff will not be able to prove her entitlement to judgment as a matter of law on her claim. She has asserted that TOLIC issued a policy and then refused to pay the amount owed to the beneficiary of that policy. Defendant's motion to dismiss Plaintiff's bad faith claim is denied.

      **B.**    **Consumer Fraud Act**

TOLIC asserts that the CFA's coverage does not extend to Plaintiff's claims and so the third count must be dismissed. The CFA does not apply to a mere denial of benefits but does

apply to alleged fraud in the sale, marketing, or advertisement of insurance policies. See, e.g., Lemelledo v. Beneficial Management Corp. of America, 696 A.2d 546, 551 (N.J. 1997) ("although several lower courts have held that the payment of insurance benefits is not subject to the CFA" the statue does cover "the sale of insurance policies as goods and services that are marketed to consumers"); Yourman v. People's Sec. Life Ins. Co., 992 F. Supp. 696, 700 (D.N.J. 1998) (finding the CFA does apply to the "sale and marketing of insurance policies").

Trying to fit her claims into this framework, Plaintiff contends that is it is not the denial of benefits she challenges as unconscionable consumer fraud but instead the "actions of TOLIC in its post-death investigation and failure to pay." (Pl.'s Opp'n at 14.) Plaintiff pleads no allegations in her complaint regarding the sale or marketing of the insurance policy, and the "actions of TOLIC in its post-death investigation" do not relate to the sale or marketing of the policy but are instead linked to the reasons for denying the claim. Plaintiff's claims are entirely based on the denial of benefits under the policy, and "[t]he mere denial of insurance benefits to which the plaintiff[ ] believed [she was] entitled does not comprise an unconscionable commercial practice." Van Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161, 168 (3d Cir. 1998). Though she is unhappy with the application of the contestability provision to her claim, she does not argue that she was fraudulently induced to agree to this provision or that TOLIC misrepresented the contestability provision when selling the policy. Because Plaintiff's allegations only relate to the denial of benefits, her claim under the CFA will be dismissed.

**IV.    CONCLUSION**

The Court cannot conclude that Plaintiff will be unable to prevail on her bad faith denial claim, and so Defendant's motion to dismiss the second count of the Complaint is denied.

Defendant's motion to dismiss the claims in the third count under the CFA is granted.  An accompanying order will issue today.



Dated:    8/4/08                                                          /s/ Robert B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge